Bobby Ray CUMBY, Appellant,

v.

The STATE of Texas, Appellee.

No. 39146.

Court of Criminal Appeals of Texas.

Feb. 2, 1966.

Rehearing Denied March 23, 1966.

Lumpkin, Watson & Smith, Warren E. Zimmerman, Amarillo, for appellant.

Dee D. Miller, Dist. Atty., John B. Reese, Asst. Dist. Atty., Amarillo, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for assault with intent to rob; the punishment, two years.

William L. Cook testified that on closing his grocery store about 9:35 p. m., February 25, which was well lighted in front by a light from the store and a large yard light next door, the appellant, with his hands down by his side and facing the lights approached him and said, "Give me the money," or "Give me that sack"; that on telling the appellant to "Go on," the appellant raised a gun, and he (Cook) swung at him with a money sack but did not hit him, and the appellant shot him three times; that while he was taking his gun from his pocket the appellant ran, and Cook shot twice but did not hit him. While testifying, Cook identified a coat exhibited to him, which was shown to belong to the appellant, as looking like the coat the appellant was wearing at the store. Cook testified that he had his back to the lights when the appellant approached him, and that appellant was facing both lights and was about ten or twelve feet from the light over the store window. Cook also identified the appellant as the person who had shot him at the store, when he saw him standing in the hall in front of the door to his hospital room.

Ronald Eugene McDonald testified that on February 2, he heard a conversation between Claude Scott, Obie Swain and the appellant which was in part as follows:

"Q Did Bobby Ray Cumby (appellant) say he had some money?

"A No, needed some money.

"Q Did you all talk about getting some money?

"A We? They talked about getting some money.

"Q What did they say?

"A They wanted money to go to this dance, and they *was* going to rob to get it.

\* \* \* \* \* \*

"Q Did Bobby Ray and Claude Scott say who they were going to rob?

"A They had a plan, they said they had been casing Mr. Cook out (grocery store).

\* \* \* \* \* \*

"A Well, at this time that Bobby Ray Cumby (appellant) and Claude Scott *come* in, Bobby Ray *say* he needed some money to go to Oklahoma, and they asked me would I go with them; I asked where they were going and they said they were going over to Cook's. Bobby Ray and Claude Scott had been casing Mr. Cook \* \* \*."

The state introduced two written statements made by the appellant which read in part as follows:

First Statement: "My name is Bobby Ray Cumby and I am 19 years old. Before Christmas I heard some boys talking at Carver High School about all of the armed robberies that had

been taking place and I heard them say that the gun that was used in the robberies was in a locker in the school. I went up to where the lockers were and I don't remember which one and I opened the door to the lockers trying to find the gun. I found it in one locker and it was in a trench coat. I took the gun and carried it to my house. My mother did not know that it was there. On Thursday night last week which would be the 25th day of February, 1965 I thought of robbing Cook's Grot. Market. I went down to the Burger stand at 12th and North Hughes and I sat around for a while. This was in the early evening. I left the burger stand and went on down toward the pool hall. There *was* not many people there and about 8:45 p. m. I came on back to my house and got the gun which was out in the back yard by the back fence, where I had put it. I got the gun and put it in the green trench coat that I was wearing and then I walked on down to where Cook's store is and I walked around for a while trying to stall for time. I walked around to the north side of the store and I waited for Mr. Cook to come out. About ten or fifteen minutes later, Mr. Cook came out and started toward his car. I came around the building from the north and I told him to let me have all of the money that he had. He started walking toward me and I had the gun in my hand and I had it cocked. * * * I don't know too much after this and all I can remember is that after the shot I started to run. I ran south and then turned around and ran back north on a little street behind the store. I threw the gun in a trash can * * *."

Second Statement: "I want to say that the *Green Trench Coat* that I was wearing last Thursday night, when I robbed Mr. Cook at his store in the heights, I took off after running back north from the store and I pulled it off

and I placed it behind a post * * *. * * * I went back to where I had put the coat and I got it and then I went on home."

Testifying in his own behalf, the appellant denied shooting Cook at the grocery store, or planning any robbery, or stating in any conversation that he needed some money and was going to rob to get it. He testified that he was in the home of Earl Reynolds at the time of the alleged robbery. This testimony was supported by that of Earl Reynolds and his daughter. He further testified that the two written statements he made to Officer Gilley were the result of pressure exerted upon him and promises made to him by the officers.

The appellant contended at the pre-trial hearing that the two written statements were involuntary and not admissible in evidence as a matter of law on a trial on the merits.

Appellant's written motion requesting a separate hearing on the voluntary nature of the written statements in advance of the date of the trial on the merits was granted. At the hearing, the state first offered evidence that the statements were made in accordance with the provisions of the statute, and then offered them into evidence. To sustain his contention that the statements were not voluntary, the appellant called as witnesses, two deputy sheriffs, the district attorney, his mother, and then testified himself.

■ At the conclusion of the hearing, the trial court found the evidence sufficient to show that said written statements were voluntarily made. The evidence sufficiently supports the trial court's findings.

It is further contended that the trial court erred during the main trial when it admitted the two written statements in evidence.

During the trial on the merits the state offered evidence that the written statements were made in compliance with the

requirements of the statute and offered them in evidence.

Without offering any evidence on the voluntary nature of the written statements or offering the evidence adduced at the pre-trial hearing, the appellant objected to their admission in evidence on the ground that they were "taken illegally and without proper warning and in violation of the defendant's constitutional rights." At this time the court admitted the statements in evidence and they were read to the jury.

■ Although the appellant later testified that he did not voluntarily make the written statements, he did not, before the close of the evidence, request the court to strike the statements from the evidence or instruct the jury not to consider them. The above contention presents no error.

The issue of the voluntary nature of the written statements was properly submitted to the jury.

■ No error is shown in the court's refusal to require Officer Gilley to divulge the name of the informer who gave him information which caused him to question the appellant about the robbery. There is no showing that the informant was present or was a material witness to the robbery. Therefore, the refusal was not error. Artell v. State, Tex.Cr.App., 372 S.W.2d 944; Lopez v. State, Tex.Cr.App., 397 S.W.2d 76; and Thayer v. State, Tex.Cr.App., 397 S.W.2d 236, dated November 10, 1965.

■ Error is urged because of the failure of the court to respond to his objection to the charge on the voluntary nature of the written statements.

The record reflects that the appellant did not present his objections to the court's charge in writing as required by statute. Therefore, this complaint is not before us for review. Art. 658 Vernon's Ann.C.C.P.; Howell v. State, 171 Tex.Cr.R. 545, 352 S.W.2d 110; Reyes v. State, Tex.Cr.App., 388 S.W.2d 433.

The appellant urges error in the admission of the written statements on the ground that he was denied counsel and not taken before a magistrate.

Following the assault to rob on February 25, Officers Gilley and Gillespie went to the high school and talked with the appellant about 9:30 a. m., March 2, in the principal's office about the shooting of Cook and asked him to come to the sheriff's office after school, which he agreed to do. At school, Gilley "told him (appellant) the situation that we had and what we were talking then about, I told him he didn't have to talk to us at all; that if he wanted his parents there, or his attorney or anybody there, he could feel free to call them." While testifying on direct examination about his conversation with the officers at school, the appellant stated: "Well, at the beginning the—asked me questions about this Cook robbery, and also asked me would I go out to the hospital and I told them yes." Gilley testified that, "He (appellant) came to our office at around four-twenty p. m., March 2nd and I again told him he was not under arrest; and told him we wanted to talk to him about this particular crime, and told him he didn't have to talk to us. I asked him earlier that morning to bring his parents with him, and I told him he could leave at any time he wanted to, but that I would like to talk to him, with his parents." After talking with the appellant in the sheriff's office they again asked him as they did at school if he would go to the hospital and see if Cook could identify him, and he again agreed to go. From his room, Cook viewed the appellant while he was standing in the hall, and identified him as the man who shot him (Cook) at the store. They returned to the sheriff's office about 5:45 p. m. and again talked to appellant about the shooting and he signed the statements about 9:50 p. m. in which he admitted shooting Cook at the store. Each statement included the warning that he had been advised of his right to counsel. Gilley testified that appellant was first placed under arrest after he signed the statements,

and they were unable to locate a magistrate on March 2, and appellant was taken before a magistrate the next morning about 9 a. m., March 3.

The appellant testified on the hearing before the court and on the main trial and at no time did he testify that he had, wanted, or asked for, or was denied counsel.

■ The evidence shows no denial of due process under Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

The other contentions presented. have been considered and they do not reveal error.

■ The evidence is sufficient to support the conviction.

The judgment is affirmed.

Opinion approved by the Court.